CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 0 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MELANIE G., | ) |
| Plaintiff, | ) ) ) |
| | ) Civil Action No. 7:17cv00128 |
| v. | ) ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Melanie G. ("Melanie")[1] has filed objections to the report, the Commissioner has responded, and this matter is now ripe for the court's consideration.

I.

Melanie raised three arguments on summary judgment and makes the same three arguments in her objections to the magistrate judge's report and recommendation. The purpose of magistrate judge review is to conserve judicial resources. United States v.

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States to use only the first name and last initial of the claimant in social security opinions.

Midgette, 478 F.3d 616, 621 (4th Cir. 2007). To that end, the objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." Id. (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997)). "The court will

not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010); see also Thomas, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

3

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

Melanie's objections are, in large part, a reiteration of the arguments she raised on summary judgment and are not the type of specific objections required by Rule 72(b). However, the court has reviewed de novo those portions of the magistrate judge's report to which Melanie objected and finds the ALJ's decision is supported by substantial evidence.

## II.

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the

4

Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III.[2]

Melanie first objects to the magistrate judge's conclusion that the ALJ properly considered her obesity and accounted for plaintiff's obesity, arguing that "[t]he ALJ's decision gave no weight to plaintiff's obesity in formulating the residual functional capacity." Pl.'s Obj., ECF. No. 15, at 9. Melanie contends that her BMI of 52.7 impacts her degenerative joint disease of the knees, which causes increased pain and limitation than expected from degenerative joint disease alone and was unaccounted for in the RFC. Pl.'s Obj., ECF. No. 15, at 8–9. She points to her physicians' notes to lose weight and her testimony about sitting and standing, and argues that the ALJ failed to consider that her extra weight increases her pain and fatigue. Pl.'s Obj., ECF. No. 15, at 10–11.

However, as the magistrate judge aptly notes, "there is no requirement in the regulations that the ALJ include a lengthy or precise analysis [of obesity] in the opinion." Rep. & Recomm., ECF No. 21, at 5 (citing Richards v. Astrue, No. 6:11cv00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012)). As required by Social Security Ruling 02–1p, the ALJ evaluated Melanie's obesity at steps 2 through 5 of the sequential evaluation process. The ALJ found obesity to be a severe impairment (RA 22–23), and specifically noted Melanie's testimony that "her activities of daily living were limited by her obesity. . . ." (RA 24). The residual functional capacity analysis repeatedly addressed Melanie's obesity and its effects on her knee impairment. The ALJ noted that the medical evidence for her knee

---

[2] Detailed facts about Melanie's impairments and medical and procedural history can be found in the report and recommendation and in the administrative transcript (ECF Nos. 8, 21). As such, they will not be repeated here.

5

impairment and obesity mostly post-dated the last insured date of March 31, 2009. (RA 24). He noted Melanie's reports of issues with attempts to lose weight in her medical records in July 2004, and that she reported a loss of 11 pounds in December 2004 but still had occasional popping in her knee following prolonged activity. (RA 25). She had knee replacement surgery in late 2005, which led to a series of reports of improvement into September 2009. (RA 25). The ALJ noted, "[a]fter the date last insured, the claimant continued to have few complaints related to her knees, but also remained obese." (RA 25). The ALJ continued that her BMI was 52 as of January 2010, and that she complained of lacking a full range of motion in her knee beginning in August 2010. (RA 25–26).

With respect to Melanie's residual functional capacity, the ALJ determined that Melanie's "bone-on-bone osteoarthritis in the right knee and subsequent total knee replacement, *along with her obesity*, support a limitation to light work involving no kneeling, no crawling, and no climbing of ladders, ropes, or scaffolds, and only occasional performance of other postural activities." (RA 26 (emphasis added)). The ALJ explicitly gave weight to Melanie's obesity in formulating the residual functional capacity. Additionally, the medical records on which the ALJ relied in evaluating Melanie's ability to work regularly reflect Melanie's height, weight, and body mass index and note her obesity.

In addition to reviewing the record as a whole, the court specifically reviewed each page cited in Melanie's objection regarding her need to lose weight or her difficulty sitting, standing, and maintaining a static posture to ascertain whether this evidence should have suggested to the ALJ that plaintiff could not perform light work with limitations. The record citations include Melanie's testimony that she shifts between standing, sitting, and lying

6

down due to discomfort and often takes breaks. (RA 48–50). She also noted difficulty putting on her socks and shoes due to her obesity, and that she experienced pain in her knees. (RA 50). The medical records referenced her obesity, where a December 13, 2004 visit for the osteoarthritis in her right knee at the Roanoke Orthopaedic Center noted an 11-pound weight loss, continued popping and catching in her knee, occasional easy fatigability, and a recommendation that she "continue with her exercise and weight loss regiment." (RA 775). On June 3, 2004, Nancy S. Harvey, MSN-FNP diagnosed Melanie with obesity, provided her with information about weight management to attempt gradual weight loss, and recommended a structured weight loss program. (RA 848). On June 6, 2003, Brent M. Johnson, M.D. recommended weight reduction and encouraged her to continue with her recent weight loss of 20-pounds. (RA 784).

The ALJ considered this information, finding obesity to be a severe impairment, referencing Melanie's attempts to lose weight, and noting her daily living activities were limited by her obesity. (RA 25). The cited pages of the medical record provide passing references to her obesity rather than evidence of functional limitations. Ricci v. Astrue, No. 5:11CV00081, 2013 WL 393339, at *2 (W.D. Va. Jan. 31, 2013) ("Instead of providing any evidence of a functional limitation posed by obesity, the record evidence cited by the magistrate judge consists almost exclusively of passing references to obesity. . . ."). These references do not stand in isolation, and are generally reflected in the medical assessment along with a myriad of other health issues. The ALJ also explicitly noted some of these references in the medical record, such as Melanie's 11-pound weight loss. (RA 25). In sum,

the ALJ repeatedly considered Melanie's obesity and its effects on her knee impairment in fashioning the residual functional capacity. Melanie's objection is overruled.

### IV.

Melanie next objects to the magistrate judge's conclusion that the ALJ properly evaluated her ability to maintain a static work posture and her need to take breaks. Pl.'s Obj., ECF No. 22, at 2–3. Melanie argues that the ALJ did not make detailed, function-by-function findings as required by SSR 96-8p, Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016). The court concurs with the magistrate judge, and holds that substantial evidence supports the ALJ's decision in this regard.

SSR 96-8p addresses the RFC assessment, and requires the ALJ to "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions [listed elsewhere in the regulations]." SSR 96-8p, 1996 WL 362207, at *1 (July 2, 1996).[3] The ALJ is instructed to include a narrative discussion and cite specific medical facts and nonmedical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. Id. at *7; see also Monroe, 826 F.3d at 189 (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings).

---

[3] Examples of listed physical functions include a claimant's "ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching). . . ." 20 C.F.R. § 416.945(b).

8

"[T]he ALJ's failure to conduct a function-by-function analysis does not necessarily result in automatic remand." Humphries v. Colvin, No. 3:15-CV-188, 2015 WL 9942619, at *4 (E.D. Va. Dec. 31, 2015), report and recommendation adopted, 2016 WL 356086 (E.D. Va. Jan. 28, 2016). In Mascio, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," finding that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d at (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); cf. Nelson v. Berryhill, No. 7:15-CV-573, 2017 WL 782938, at *1 (W.D. Va. Feb. 28, 2017) (recommending remand where "the ALJ's opinion [left] the court to guess at how he reached his conclusions regarding Nelson's RFC").

In a previous case before this court, where the plaintiff argued that an "ALJ is required to make specific findings about whether his limitations would cause him to lie down during the day, to frequently change positions to the point he cannot maintain work activity, and to have difficulty concentrating and focusing due to pain," the court upheld the decision where the ALJ sufficiently explained why the plaintiff's testimony was discredited and contained specific analysis that allowed for meaningful review. See Godfrey v. Berryhill, No. 7:16CV580, 2018 WL 1474087, at *4 (W.D. Va. Mar. 26, 2018). Other courts in the Fourth Circuit have upheld decisions where "the ALJ's narrative permits meaningful review because [ ]he made an implicit finding of Plaintiff's capacity to stand and walk and explained how [ ]he reached that conclusion." Turner v. Berryhill, No. 1:16CV1202, 2018 WL 1311539, at *6–8 (M.D.N.C. Mar. 13, 2018); see also Armstrong v. Colvin, No. 1:14CV346, 2015 WL

9

6738723, at *3–6 (M.D.N.C. Nov. 4, 2015) (finding substantial evidence supported ALJ's decision regarding knee impairment's effect on work performance where plaintiff objected to lack of function-by-function analysis but ALJ provided detailed narrative of medical evidence and explained reasoning for credibility determination); Harrison v. Colvin, No. 1:10–CV–18, 2013 WL 1661096, at *2 (M.D.N.C. Apr. 17, 2013) ("[B]y finding that Ms. Harrison was capable of performing light work, the ALJ implicitly found that she was capable of standing or walking for approximately six hours in an eight-hour work day.").

Here, the magistrate judge cited the requirements of SSR 96-8p, and described how the ALJ satisfied those requirements when analyzing Melanie's physical limitations:

> In his opinion, the ALJ recognized [Melanie]'s testimony at the hearing regarding her continued pain following her knee surgery and her limited ability to stand. R. 24. However, the ALJ noted the medical evidence showing that she had a normal gait, without the use of an assistive device, following her knee replacement surgery, and reported "little to no pain in her knee." R. 25–26. A record from [Melanie]'s orthopedist notes that, six weeks following her knee surgery, she is walking with no assistive device and complaining of "minimal pain" except after therapy. R. 763. At [Melanie]'s follow up appointments one year and three years post surgery, she reported little or no pain and had normal gait. R. 758, 746. Likewise, the ALJ emphasized that "no treating or examining source suggested disability during the relevant period." Id. The ALJ wrote, "[Melanie's] generally normal gait and otherwise normal physical examinations indicate that she was capable of the standing, walking, and lifting required for light exertion jobs." Id. In sum, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a detailed summary of [Melanie]'s medical records, [Melanie]'s hearing testimony and the ALJ's conclusions.

Rep. & Recomm., ECF No. 21, at 8–9. The ALJ's decision itself, and not only the magistrate judge's decision, includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review of the RFC. (RA 23–26).

The ALJ did not fail to consider conflicting medical evidence, like in Mascio, and did not pose hypothetical questions to the vocational expert that excluded some of Melanie's functional limitations, like in Monroe. The ALJ noted Melanie's statements about her need to walk or lie down after sitting at her work station, but ultimately found they lacked credibility in part because no treating physician or examining source suggested disability during the relevant period. (RA 24–26, 48–50). The ALJ also asked the vocational expert about shifting between sitting and standing; although Melanie contends that the hypothetical was "based on the premise" that she could remain in place rather than leave her work station to walk and rest, the ALJ did not accept her testimony as fully credible and therefore did not need to address her continued presence at the work station. (RA 48–50, 56); cf. Cook v. Colvin, No. 2:13–cv–30155, 2015 WL 430880, at *17 (S.D.W. Va. Jan. 30, 2015) ("[T]he ALJ need not comment on every piece of evidence in the record.").

The court disagrees, therefore, with Melanie's argument that the ALJ failed to build a logical bridge between the evidence and his conclusion that Melanie's physical limitations limit her to standing/walking about 6 hours and sitting about 6 hours in an 8-hour workday. (RA 23). To the extent the ALJ can be faulted for not engaging in the detailed, function-by-function analysis Melanie desires, the court does not find remand necessary. As the Fourth Circuit made clear in Mascio and Monroe, the failure to conduct a function-by-function analysis does not require remand in every case. Instead, remand is the appropriate remedy

11

where the ALJ failed to assess relevant functions or where "other inadequacies" in the opinion "frustrate meaningful review." Mascio, 780 F.3d at 636 (citing Cichocki, 729 F.3d at 177); see also Monroe, 826 F.3d at 188. Neither of these situations is present here. The ALJ discussed, in detail, Melanie's relevant physical functions, summarized the pertinent medical records, and provided a thorough explanation for how he weighed the medical opinions.

As such, the magistrate judge was correct to find that the ALJ properly analyzed Melanie's physical limitations and that substantial evidence supported the ALJ's conclusions. Hicklin-Jones v. Colvin, No. 3:14-CV-584, 2015 WL 8958542, at *6 (W.D.N.C. Dec. 15, 2015) (finding remand unnecessary where the ALJ's narrative provided "ample insight into his decisional process"); Humphries v. Colvin, No. 3:15-CV-188, 2015 WL 9942619, at *4 (E.D. Va. Dec. 31, 2015), report and recommendation adopted, 2016 WL 356086 (E.D. Va. Jan. 28, 2016) (finding remand unnecessary where the ALJ addressed "relevant work-related functions" and provided a "sufficient basis to review his conclusions" in the RFC analysis). Accordingly, Melanie's objections to the ALJ's function-by-function analysis are overruled.

## V.

Finally, Melanie objects generally to the magistrate judge's determination that the ALJ's credibility finding is supported by substantial evidence. Melanie points to certain medical evidence that she argues demonstrates her inability to perform the work level stated in the ALJ's decision. She notes that the ALJ and the magistrate judge "ignored the evidence after plaintiff's knee replacement surgery through the date last insured documenting plaintiff's continued complaints of pain in her knees and lower legs and the objective

medical evidence of record documenting osteoarthritis in both knees and lower legs and continued tightness around the patella." Pl.'s Obj., ECF No. 22, at 4.

In reviewing Melanie's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).

Here, the ALJ exhaustively considered the medical evidence in his decision, as well as Melanie's allegations as to her functional capacity. The ALJ reviewed Melanie's treatment records, including those following her June 2005 knee replacement, and found that there was limited evidence prior to Melanie's date last insured regarding functional limitations caused by her knee impairment and obesity. (RA 24–25). The ALJ addressed how Melanie reported minimal pain and nearly a full range of motion a few weeks after the surgery; reported no pain with ambulation and had full extension upon examination in June 2006; and claimed occasional tightness around her patella during a normal physical examination in September 2008, approximately seven months prior to her date last insured. (RA 25). The ALJ ultimately concluded that Melanie's allegations were not fully credible based on her lack of

need for an assistive device for ambulation, reports of little to no pain in her knee, her normal gait, and her caring for her grandson prior to her date last insured. (RA 26). The ALJ also found persuasive that no treating or examining source suggested disability during the relevant period. (RA 26).

The ALJ conducted a proper credibility analysis in this case. It is the ALJ's role to resolve inconsistencies between a claimant's alleged impairments and his ability to work. The court's role is to determine whether there is substantial evidence to support the factual findings of the ALJ and whether they were reached through the correct legal standard. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Here, the ALJ did not mischaracterize the evidence or fail to build a logical bridge between the evidence and his conclusions regarding Melanie's credibility. The court finds no error in the magistrate judge's conclusion that the ALJ's credibility assessment was proper and supported by substantial evidence.

## VI.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Melanie properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: 09/08/2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge